UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

VINCENT CURTIS CONYERS,

            Plaintiff,                         CV-05-2079 (SDF)

      -against-                     **OPINION & ORDER**

KIP HAWLEY[1], in his official capacity as
Assistant Secretary of the Transportation Security
Administration, United States Department of
Homeland Security,

            Defendant.
---------------------------------------------------------X

FEUERSTEIN, J.

*Pro se* plaintiff Vincent Curtis Conyers ("plaintiff") commenced this action seeking, *inter alia*, judgment declaring that defendant Kip Hawley, in his official capacity as Assistant Secretary of the Transportation Security Administration (TSA), United States Department of Homeland Security (defendant), has (1) misinterpreted section 111(d) of the Aviation and Transportation Security Act (ATSA), Public Law 107-71, 115 Stat. 597 (2001), (codified as a note to 49 U.S.C. § 44935); (2) violated certain veteran preference requirements set forth in 49 U.S.C. § 40122(g)(2)(B) and its implementing regulations; and (3) deprived him of his Fifth Amendment due process and equal protection rights. Defendant moves pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure to dismiss the action for lack of subject matter

---

[1] The plaintiff's complaint originally named David M. Stone, in his official capacity as the Acting Administrator of TSA. However, Kip Hawley, as the permanent Assistant Secretary and, thus, the head of TSA, was automatically substituted in accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure.

1

jurisdiction or, in the alternative, pursuant to Rule 12(c) for judgment on the pleadings. For the reasons stated herein, defendant's motion is granted.

I. Background

Plaintiff alleges that he is a "preference eligible" veteran pursuant to 5 U.S.C. § 2108(3) and was denied consideration for employment in numerous positions within the Transportation Security Administration (TSA)[2]. (Complaint [Compl.], ¶ 4). Specifically, plaintiff contends that he "applied as a veteran preference eligible for numerous Supervisory Transportation Security Screener, Lead Transportation Security Screener, Transportation Security Screener, Training Coordinator, Screening Manager, and Customer Support positions agency-wide." (Compl., ¶ 19). The vacancy announcements for the positions stated that, as a prerequisite for consideration, applicants for security screener positions were required to successfully complete an employment assessment, (Compl., ¶ 16), which included an evaluation of the applicant's mental and physical abilities and interpersonal skills.

Plaintiff alleges that on July 19, 2002, he "underwent an employment assessment and was determined to be 'Disqualified/Unqualified' for the position of Supervisory Transportation Security Screener, Long Island Mac Arthur Airport, Ronkonkoma, New York." (Compl., ¶ 20). Plaintiff contends that "[c]ontrary to numerous statutory and regulatory veteran preference

---

[2] Pursuant to section 101 of the ATSA, 49 U.S.C. § 114 was added to establish the TSA as an administration of the United States Department of Transportation (DOT). However, pursuant to the Department of Homeland Security Reorganization Plan, as required by Section 1502 of the Department of Homeland Security Act of 2002 (HSA), Pub. L. No. 107-296, 116 Stat. 2135 (2002), TSA was transferred from the DOT to the Department of Homeland Security, effective March 1, 2003.

requirements," he was not informed of the reason for his negative assessment rating, and he was unable to obtain any administrative review of the negative assessment rating. (Compl., ¶¶ 21, 22). In addition, plaintiff contends that the TSA applied the negative assessment rating to all of the employment positions for which he applied. (Compl., ¶ 23).

On October 21, 2002, plaintiff appealed the negative assessment rating to the Merit Systems Protection Board (MSPB), alleging claims under 5 C.F.R. § 731.501 (2002) (relating to unsuitability determinations), 5 C.F.R. § 300.104 (relating to alleged improper employment practices), 38 U.S.C. § 4324 (2002) (the Uniformed Service Employment and Preemployment Act of 1994), 5 U.S.C. § 2302(b) (2002) (the Whistle Blower Protection Act), 5 U.S.C. § 3330a (the Veterans' Employment Opportunities Act of 1998), and 5 U.S.C. § 1203 (relating to review of agency regulations). In an initial decision dated February 14, 2003, the administrative judge (AJ) dismissed the appeal for lack of jurisdiction, holding that section 111(d) of the ATSA grants TSA power to appoint applicants to screener positions "notwithstanding any other provision of law." Conyers v. Department of Transportation, No. NY-3443-03-0034-I-1 (Feb. 14, 2003). The AJ determined that this statutory language precluded the MSPB from asserting jurisdiction over plaintiff's appeal. On March 3, 2003, plaintiff filed a petition for review of the AJ's initial decision with the MSPB.

On May 6, 2003, plaintiff was advised that "the negative assessment rating resulted from [his] allegedly failing the physical examination and [that] veteran preference is afforded only after the successfully [sic] completion of the employment assessment." (Compl., ¶ 30).

On March 15, 2004, the AJ's decision became the final decision of the MSPB after it denied plaintiff's petition for review for failure to meet the criteria set forth at 5 C.F.R. §

3

1201.115(d) (2002). Conyers v. Department of Transportation, No. NY-3443-03-0034-I-1, 95 M.S.P.R. 671, 2004 WL 601699 (M.S.P.B. Mar. 15, 2004) (table). Thereafter, pursuant to 5 U.S.C. § 7703, plaintiff petitioned the United States Court of Appeals for the Federal Circuit for judicial review of the final decision of the MSPB.[3] By decision dated November 9, 2004, the Federal Circuit affirmed the final decision of the MSPB dismissing plaintiff's appeal for lack of jurisdiction, holding that the MSPB is divested of jurisdiction to hear appeals alleging violations of general federal statutes insofar as TSA screener positions are concerned. Conyers v. MSPB, 388 F.3d 1380, 1383 (Fed. Cir. 2004), cert. denied, 543 U.S. 1171, 125 S.Ct. 1360, 161 L.Ed.2d 150 (2005).

On April 28, 2005, plaintiff filed this action alleging: (1) that defendant misconstrued section 111(d) of the ATSA, (Compl., ¶¶ 38-40, 65-67); (2) that defendant "arbitrarily and capriciously developed, implemented, and utilized personnel practices that contradicted" the personnel management requirements of section 101(a) of the ATSA, (Compl., ¶¶ 41-43); (3) that defendant "failed to abide by veteran preference requirements," (Compl., ¶¶ 44-46); (4) that defendant's personnel practices, and specifically the inconsistent treatment of applicants for TSA screener positions, violated plaintiff's Fifth Amendment equal protection rights, (Compl., ¶¶ 47-49); (5) that defendant's personnel practices violated plaintiff's Fifth Amendment due process rights, insofar as he was deprived of his property right to be considered a "preference eligible" veteran (Compl., ¶¶ 50-52); and 6) that defendant failed to afford plaintiff "preference eligible" veteran status when he applied for the position of Supervisory Transportation Security Screener

---

[3] Pursuant to 5 U.S.C. § 7703(b)(1), the United States Court of Appeals has exclusive jurisdiction over a petition to review a final order or final decision of the MSPB.

at MacArthur Airport, (Compl., ¶¶ 53-55), and for numerous other positions, (Compl., ¶¶ 56-64).

Defendant now moves pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure to dismiss the complaint for lack of subject matter jurisdiction or, in the alternative, pursuant to Rule 12(c) for judgment on the pleadings.

II. Discussion

A. The ATSA

Shortly after the terrorist hijackings of four commercial airliners on September 11, 2001, Congress enacted the ATSA in order to improve airport security. Section 101(a) of the ATSA, which added section 114 to Title 49 of the United States Code, provides that the head of the TSA[4] shall "develop standards for the hiring and retention of security screening personnel; * * * and be responsible for hiring and training personnel to provide security screening at all airports in the United States where screening is required under section 44901 [of 49 U.S.C.], * * *." 49 U.S.C. § 114(e). 49 U.S.C. § 114(n) provides, in relevant part, as follows:

> "The personnel management system established by the Administrator of the Federal Aviation Administration [FAA] under section 40122 shall apply to employees of the [TSA], or, subject to the requirements of such section, the [head of the TSA] may make such modifications to the personnel management system with respect to such employees as the [head of the TSA] considers appropriate, such as adopting aspects of other personnel systems of the [DOT]."

Section 114(n) requires the TSA to apply the FAA personnel management system to employees of the TSA or to establish its own personnel management system, subject to the provisions of 49

---

[4] Although the ATSA establishes the Under Secretary of Transportation for Security as the head of the TSA, upon enactment of the HSA and subsequent transfer of the TSA to the Department of Homeland Security, the terminology changed.

U.S.C. § 40122[5].

Section 111 of the ATSA, which is codified at 49 U.S.C. § 44935, governs the terms and conditions of employment applicable specifically to airport security screeners. Section 111 provides, in relevant part, that the head of the TSA (1) "shall establish a program for the hiring and training of security screening personnel;" (2) "shall establish qualification standards for individuals to be hired by the United States as security screening personnel;" and (3) "shall develop a security screening personnel examination for use in determining the qualification of individuals seeking employment as security screening personnel," and "shall also review, and revise as necessary, any standard, rule, or regulation governing the employment of individuals as security screening personnel." With respect to the qualification standards, section 111 provides, in relevant part, as follows:

> "Notwithstanding any provision of law, [the qualification standards established by the head of the TSA] shall require, at a minimum, an individual– (i) to have a satisfactory or better score on a federal security screening personnel selection examination; * * * [and] (iv) to meet such other qualifications as the [head of the TSA] may establish, * * *."

---

[5] The personnel management system developed and implemented by the FAA under 49 U.S.C. § 40122(g) provides "for greater flexibility in the hiring, training, compensation, and location of personnel" than that applicable to most federal employees, insofar as only enumerated employee protections of federal personnel laws apply, including whistleblower protection (5 U.S.C. § 2303[b]); *veterans' preference (5 U.S.C. §§ 3308-3320)*; labor-management relations (chapter 71 of title 5); anti-discrimination (5 U.S.C. § 7204); suitability, security, and conduct (chapter 73 of title 5); compensation for work injury (chapter 81 of title 5); retirement, unemployment compensation and insurance coverage (chapters 83-85, 87 and 89 of title 5), and appeals to the MSPB (5 U.S.C. §§ 1204, 1211-1218, 1221 and 7701-7703). 49 U.S.C. § 40122(g); see American Federation of Government Employees TSA Local 1 v. Hawley (AFGE), 481 F.Supp.2d 72, 78 ( D.D.C. 2006). Moreover, 49 U.S.C. § 40122(g)(3) specifically provides that under the FAA's personnel management system, an employee may submit an appeal to the MSPB and may seek judicial review of any resulting final orders or decisions of the MSPB * * *. (emphasis added).

In addition, section 111(a) provides that the head of the TSA "shall provide a preference for the hiring of an individual as a security screener if the individual is a member or former member of the armed forces and if the individual is entitled, under statute, to retired, retirement, or retainer pay on account of service as a member of the armed forces."

Section 111(d), which is codified as a note following 49 U.S.C. § 44935, provides, in relevant part, as follows:

> "*Notwithstanding any other provision of law*, the [head of the TSA] may employ, appoint, discipline, terminate, and fix the compensation, terms, and conditions of employment of Federal service for such a number of individuals as the [head of the TSA] determines to be necessary to carry out the screening functions of the [head of the TSA] under section 44901 of title 49, United States Code. * * *." (Emphasis added).

B.  Subject Matter Jurisdiction

1.  Rule 12(b)(1) Standard of Review

"In determining whether the federal courts have subject matter jurisdiction over a cause of action, a district court must look to the way the complaint is drawn to see if it claims a right to recover under the laws of the United States." IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1055 (2d Cir.1993) (quoting Goldman v. Gallant Securities, Inc., 878 F.2d 71, 73 [2d Cir.1989]). In considering a motion to dismiss for lack of subject matter jurisdiction, a court must accept as true all material factual allegations in the complaint. Atlantic Mut. Ins. Co. v. Balfour Maclaine Intern. Ltd., 968 F.2d 196, 198 (2d Cir. 1992). However, when deciding a jurisdictional motion, district courts may look beyond the allegations of the complaint. See LeBlanc v. Cleveland, 198 F.3d 353, 355 (2d Cir. 1999) ("Where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to

7

evidence outside the pleadings, such as affidavits."). Plaintiffs have the burden of establishing that subject matter jurisdiction exists. Lunney v. United States, 319 F.3d 550, 554 (2d Cir. 2003).

Plaintiff is proceeding *pro se*. Therefore, his submission should be held "to less stringent standards than formal pleadings drafted by lawyers . . . ." Hughes v. Rowe, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (quotations and citations omitted). Nevertheless, *pro se* plaintiffs are not excused from the normal rules of pleading and dismissal. Where subject matter jurisdiction is lacking, "dismissal is mandatory." Manway Const. Co., Inc. v. Housing Authority of City of Hartford, 711 F.2d 501, 503 (2d Cir. 1983).

### 2. Fifth Amendment Claims

To the extent plaintiff contends that subject matter jurisdiction is founded on the Fifth Amendment to the United States Constitution (Compl., ¶ 2), that amendment alone does not create a jurisdictional basis. See, Wright v. United States, 902 F.Supp. 486, 489 (S.D.N.Y. 1995). However, 28 U.S.C. § 1331, provides that the district courts have jurisdiction over claims "arising under the Constitution * * * of the United States." Accordingly, there is a jurisdictional basis for plaintiff's Fifth Amendment claims.

Notwithstanding a jurisdictional basis for plaintiff's Fifth Amendment claims, those claims are barred by the doctrine of sovereign immunity. "[U]nder the principle of sovereign immunity * * * the United States may not be sued without its consent and * * * the existence of consent is a prerequisite for jurisdiction." Adeleke v. U.S., 355 F.3d 144, 150 (2d Cir.

2004)(citing U.S. v. Mitchell, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 [1983]). Sovereign immunity is a jurisdictional bar which, absent a waiver, shields the federal government, its agencies and its officers acting in their official capacities from suit. Department of Army v. Blue Fox, Inc., 525 U.S. 255, 260, 119 S.Ct. 687, 142 L.Ed.2d 718 (1999); F.D.I.C. v. Meyer, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); see Dotson v. Griesa, 398 F.3d 156, 177 (2d Cir. 2005), cert. denied, 126 S.Ct. 2859, 165 L.Ed.2d 894 (2006) (holding that the doctrine of sovereign immunity also bars suits against federal agencies and federal officers acting in their official capacities). A waiver of sovereign immunity must be "unequivocally expressed" in statutory text, U.S. v. Mitchell, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980), and will be strictly construed and limited to its express terms. Lunney, 319 F.3d at 554.

Since defendant is an employee of a federal agency sued in his official capacity the doctrine of sovereign immunity is applicable to the claims against him. See, e.g. Doherty v. Murphy, No. 05 CV 557, 2006 WL 752886, at * 1 (D.Conn. Mar. 21, 2006) (holding that sovereign immunity barred the claim against the defendant, a supervisor employed by the TSA).

The general federal question jurisdictional statute, 28 U.S.C. § 1331, does not constitute a general waiver of sovereign immunity. See Mack v. United States, 814 F.2d 120, 122 (2d Cir. 1987); B.K. Instrument, Inc. v. United States, 715 F.2d 713, 724 (2d Cir. 1983), and the United States has not otherwise waived its sovereign immunity against constitutional claims. See Meyer, 510 U.S. 471, 114 S.Ct. 996; see also Endara v. I.R.S., No. 96 CV 508, 1997 WL 792355, at * 5 (E.D.N.Y. Jun. 30, 1997). Therefore, any waiver of sovereign immunity "must be sought in [some other] statute giving rise to the cause[s] of action" asserted by plaintiff. Mack, 814 F.2d at 122 (citing Doe v. Civiletti, 635 F.2d 88, 94 (2d Cir. 1980)). Accordingly, plaintiff's

9

Fifth Amendment claims are dismissed for lack of jurisdiction.

3.   The APA Claims

Plaintiff purports to also base jurisdiction, *inter alia*, on Section 702 of the Administrative Procedure Act, (APA), 5 U.S.C. §§ 701, *et seq.* (Compl., ¶ 2). "The APA is not an independent grant of subject matter jurisdiction. * * * Rather, it waives the federal government's sovereign immunity in actions [properly] brought under the general federal question jurisdictional statute, 28 U.S.C. § 1331." Lunney, 319 F.3d at 557-558 (internal quotations and citations omitted). Section 702 of the APA provides, in relevant part, as follows:

> "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim than an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the Untied States * * *. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: *Provided*, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in officer, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." (emphasis in original).

Although the APA waives the defense of sovereign immunity as to any action, such as this one, seeking non-monetary relief and "stating a claim than an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority," it does not waive sovereign immunity "where a matter is statutorily committed to agency discretion

10

or where another statute provides a form of relief which is expressly or impliedly exclusive." Dew v. United States, 192 F.3d 366, 371 (2d Cir. 1999) (citing Sprecher v. Graber, 716 F.2d 968, 974 (2d Cir. 1983) (internal quotations and citation omitted)).

Section 706(2) of the APA provides that "[t]he reviewing court shall * * * hold unlawful and set aside agency action, findings, and conclusions found to be * * * arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; * * * in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] * * * without observance of procedure required by law." 5 U.S.C. §§ 706(2)(A), (C) and (D). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." AFGE, 481 F.Supp.2d at 90.

Although some judicial review of administrative action is permitted under the APA, such review is precluded, *inter alia*, where the "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2); see Lunney, 319 F.3d at 558 (holding that agency action is not subject to judicial review to the extent such action is committed to agency discretion by law). "[C]ourts begin with the strong presumption that Congress intends judicial review of administrative actions." Springs v. Stone, 362 F.Supp.2d 686, 702 (E.D.Va. 2005) (quoting Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667, 670, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986)[6]); see also Lunney, 319 F.3d at 558 (holding that the APA embodies a basic presumption of judicial review). However, a court is without jurisdiction to conduct a review in "those rare instances where statutes are drawn in such broad terms that in a given case there is no

---

[6] Bowen was superceded by statute on other grounds as recognized, *inter alia*, in Abbey v. Sullivan, 978 F.2d 37 (2d Cir. 1992).

11

law to apply." Springs at 703 (citing Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 410, 91 S.Ct. 814, 28 L.ed.2d 136 (1971)[7]); see also Lunney, 319 F.3d at 558 (holding that there is no jurisdiction under section 701(a)(2) of the APA if the statute or regulation said to govern the challenged agency action is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion). "There is no law to apply if 'the statute is drawn so that a court would have no meaningful standard against which to judge the agency's discretion.'" Springs, 362 F.Supp.2d at 703 (quoting Heckler v. Chaney, 470 U.S. 821, 830, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985)).

As noted more fully below, 49 U.S.C. § 114(n) is inapplicable to security screeners, and, thus, defendant is not required to implement or follow the FAA's personnel management system with respect to security screeners. The ATSA offers no additional guidance as to how TSA should develop or implement its own personnel management system; rather section 111(d) of the ATSA "explicitly authorizes the exercise of broad discretion not constrained by the judicial review provisions contained in the APA." Springs, 362 F.Supp.2d at 703; see also AFGE, 481 F.Supp.2d at 91 (accord). Accordingly, any judicial review of the TSA's personnel management systems, specifically its implementation of the employment assessment requirements, "would both lack any legal basis or legal standard against which to measure its capriciousness, and would fail to respect Congress's express intent that the TSA have broad discretion in making employment decisions for security screeners." AFGE, 481 F.Supp.2d at 91. Since section 111(d) of the ATSA grants the TSA discretion to incorporate or not incorporate the veteran

---

[7] Volpe was overruled on other grounds by Califano v. Sanders, 430 U.S. 99, 105, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

preference eligibility requirements which plaintiff complains were not incorporated, this Court lacks jurisdiction to review that exercise of discretion. See, e.g. AFGE, 481 F.Supp.2d at 91 (dismissing the count of the plaintiffs' complaint alleging that the TSA's RIF standard was arbitrary and capricious and in violation of the APA because section 111(d) of the ATSA granted the TSA discretion to incorporate or not incorporate in its RIF the termination criteria the plaintiffs complained were not incorporated and, thus, the court did not have jurisdiction over that claim). Accordingly, the doctrine of sovereign immunity applies and plaintiff's APA claims are dismissed for lack of jurisdiction.

4. The VEOA

The only other jurisdictional basis asserted by plaintiff is 5 U.S.C. § 3330b, a section of the Veterans Employment Opportunities Act of 1998 (VEOA), governing plaintiff's claims alleging violations of veterans' preference laws. Section 3330b provides, in pertinent part, as follows:

> (a) In lieu of continuing the administrative redress procedure provided under section 3330a(d), a preference eligible [veteran], * * * may elect, in accordance with this section, to terminate those administrative proceedings and file an action with the appropriate United States district court no later than 60 days after the date of the election.
>
> (b) An election under this section may not be made– (1) before the 121st day after the date on which the appeal is filed with the [MSPB] under section 3330a(d); or (2) after the [MSPB] has issued a judicially reviewable decision on the merits of the appeal.[8]

---

[8] Since the AJ's dismissal of plaintiff's appeal for lack of subject matter jurisdiction, see Conyers v. Department of Transportation, No. NY-3443-03-0034-I-1 (Feb. 14, 2003), became the

13

Contrary to defendant's contention, the VEOA confers jurisdiction on a district court, but only to the extent that the plaintiff is seeking judicial redress for violations of his or her rights "under any statute or regulation relating to veterans' preference." 5 U.S.C. § 3330a(a)(1)(A); see also Galvan v. United States Department of Defense, No. Civ. A.SA00CA0517, 2001 WL 699086, at * 6 (W.D.Tex. May 31, 2001) (report and recommendation) (finding that under the VEOA, the plaintiffs can only seek judicial redress if their rights have been violated "under any statute or regulation relating to veterans' preference"); Hunt v. United States Government, 154 F.Supp.2d 1047, 1050-1051 (E.D.Mich. 2001), aff'd sub nom Hunt v. United States Army, 30 Fed.Appx. 567 (6th Cir. 2002) (accord). Accordingly, a plaintiff must make a threshold showing that his or her alleged veterans' preference rights were violated under a particular statute or regulation. Galvan, 2001 WL 699086, at * 6.

The statutes and regulations cited by plaintiff as purportedly relating to veterans' preference are 49 U.S.C. § 40122(g)(2)(B); 5 U.S.C. §§ 1302, 3312, 3317, 3318(b), 3320; and 5 C.F.R. §§ 5.1, 300.101, 300.102(d), 300.104(c), 300.406, 302.202, 302.302, 332.406, 339.204, 339.306, 731.302(a), 731.402 (See, Compl. ¶¶ 46, 55, 58). Clearly, to the extent plaintiff's claims rely on violations of 5 U.S.C. §§ 3312, 3317, 3318(b) and 3320, and their implementing regulations, his claims involve statutes and regulations "relating to veterans' preferences." See 5 U.S.C. § 2302(e)(1) (enumerating what constitutes a veterans' preference requirement). In

---

final decision of the MSPB upon its denial of plaintiff's petition for review, 95 M.S.P.R. 671, 2004 WL 601699 (M.S.P.B. Mar. 15, 2004) (table), the MSPB has not issued a "judicially reviewable decision *on the merits* of the appeal." 5 U.S.C. § 3330b(b)(2) (emphasis added); see Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507, n. 4 (2d Cir. 1994) (stating that a dismissal for want of subject matter jurisdiction is not a decision on the merits).

14

addition, to the extent 49 U.S.C. § 40122(g)(2)(B) "has a bearing on, concerns, and has 'some connection with' veterans' preference rights," that statute also "relates to" veterans' preference within the meaning of section 3330a of the VEOA. See, e.g. Walker v. Department of the Army, 104 M.S.P.R. 96, 101 (M.S.P.B. Nov. 27, 2006) (citing Dean v. Department of Agriculture, 99 M.S.P.R. 533 (M.S.P.B. Aug. 5, 2005)).

However, plaintiff cannot make the requisite threshold showing that his or her alleged veterans' preference rights were violated under any of the above statutes or regulations. Section 111(d) of the ATSA renders all other generally applicable federal personnel statutes, including section 101 of the ATSA and veterans' preference statutes and regulations, inapplicable to the head of the TSA's authority to "employ, appoint, discipline, [and] terminate" security screeners. See, e.g. AFGE, 481 F.Supp.2d at 83-89 (holding that the plain text and legislative history of section 111(d) clearly signals Congress's intention to grant the head of the TSA authority to design a personnel management system for airport security screeners, to include or not include, at his or her discretion, provisions of other federal personnel laws); Springs, 362 F.Supp.2d at 698 (holding that those provisions of law that would otherwise constrain the TSA's discretion, including section 101 of the ATSA and the relevant provisions of the VPA, do not apply to employment action affecting airport security screeners); Conyers v. Merit Systems Protection Board, 388 F.3d 1380, 1382 (Fed.Cir. 2004) (holding that section 111(d) of the ATSA renders inapplicable general federal statutes that otherwise would apply to the TSA's power to "employ, appoint, discipline, terminate, and fix the compensation terms, and conditions of employment of Federal service" for screener positions). The personnel management provisions of section 101 of the ATSA, which includes the veteran preference eligibility provision, are applicable only with

15

respect to non-screener employees of TSA. AFGE, 481 F.Supp.2d at 83; Springs, 362 F.Supp.2d at 698.

Contrary to plaintiff's contention, the "notwithstanding any other provision of law" clause "clearly signals the drafter's intention that the provisions of [that] section override conflicting provisions of any other section," of the ATSA, section 101 included. Springs, 362 F.Supp.2d at 697 (quoting Cisneros v. Alpine Ridge Group, 508 U.S. 10, 18, 113 S.Ct. 1898, 123 L.Ed.2d 572 (1993) [collecting cases]); see also AFGE, 481 F.Supp.2d at 86 (holding that a "notwithstanding" provision may indeed negate an earlier provision of the same law if Congress so intends). Moreover, the ATSA is replete with provisions distinguishing security screeners from other classes of TSA employees. See AFGE, 481 F.Supp.2d at 84; see e.g. 49 U.S.C. § 44901(b); 49 U.S.C. § 44935 (i).

In addition, the district court in AFGE specifically held that the TSA did not violate the Veterans' Preference Act (VPA), 5 U.S.C. § 3901, *et seq.*, when it failed to take into account military service, tenure of employment, and efficiency ratings when it implemented its May 2003 Reduction in Force because section 111(d) of the ATSA invested the head of the TSA with the authority to exempt security screeners from generally applicable federal personnel laws, including the VPA. AFGE, 481 F.Supp.2d at 76, 89-90. Likewise, defendant did not violate the veteran preference eligibility requirements incorporated in 49 U.S.C. § 40122(g)(2)(B), or otherwise fail to abide by the veteran preference requirements set forth in the other statutes and regulations upon which plaintiff relies, since defendant had the discretion under section 111(d) not to incorporate such requirements in the personnel management system he developed and implemented for security screeners. Accordingly, plaintiff cannot make a threshold showing that

16

his or her alleged veterans' preference rights were violated and, thus, this court lacks subject matter over his VEOA claims.

III. Conclusion

For the reasons stated herein, defendant's motion is granted and plaintiff's complaint is dismissed for lack of subject matter jurisdiction. The clerk of the Court is directed to enter judgment accordingly and to close this case.

SO ORDERED

                                                     /s/
                                 SANDRA J. FEUERSTEIN
                                 United States District Judge

Dated: July 26, 2007
       Central Islip, N.Y.

Copies to:
Vincent Curtis Conyers, *pro se*
533 Mitchell Street
Uniondale, New York 11553-3014

United States Attorney's Office
Eastern District of New York
610 Federal Plaza
Central Islip, New York 11722
Attn: Thomas A. McFarland, AUSA